UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-23611-CIV-SIMONTON

RCTV INTERNATIONAL CORP.,

    Plaintiff,

vs.

MIGUEL ROSENFELD, *et al.*,

    Defendants.
_____/

<u>ORDER ON
RCTV COMPANIES' VERIFIED MOTION TO DETERMINE
REASONABLE ATTORNEYS' FEES
BASED UPON DEFENDANTS' SUBSTITUTION
OF EXPERT ON VENEZUELAN LAW</u>

This matter is before the undersigned Magistrate Judge upon Plaintiff RCTV Companies' Verified Motion to Determine Reasonable Attorneys' Fees, ECF No. [209]. Defendants have a filed a Response and Plaintiffs have filed a Reply, ECF Nos. [215] [216]. Pursuant to the consent of the Parties, this action has been referred by the Honorable Donald L. Graham to the undersigned for all further proceedings, including trial, ECF Nos. [64] [65]. For the following reasons, the undersigned grants the Plaintiff RCTV's Motion to Determine Reasonable Attorneys' Fees, in part.

    I.    **INTRODUCTION**

This case involves copyright and declaratory judgment claims between Plaintiff/Counterdefendants RCTV International Corp., ("RCTV Miami') and Radio Caracas Television RCTV, C.A., ("RCTV Caracas") (collectively "RCTV" or "Plaintiffs")[1] and Defendants Perla Farias De Eskinazi ("Farias") and Miguel Rosenfeld ("Rosenfeld") related to the creation, production and distribution of several Venezuelan Telenovelas between the years of 1989 and 2002. At the request of the Parties, the matter was

---

[1] The undersigned recognizes that RCTV Caracas is not formally a Plaintiff.

1

bifurcated in order that the Court could resolve the ownership issue related to those copyrights, with the issue of damages related to any infringement of those copyrights to be determined later, ECF No. [164]. The instant Motion relates to the RCTV Plaintiffs' request for an award of attorney's fees and costs for additional and duplicative work performed by Plaintiffs' Counsel when the Defendants were granted leave to untimely substitute their expert on Venezuelan Law, Juan Luis Marturet, for a new expert on Venezuelan Law, Juan Rafael Farinas Diaz.  For the following reasons, the Plaintiffs' Motion is Granted, in part, and the Plaintiffs are awarded $20,427.36 in attorneys' fees and $11,399.92 in costs for a total award of $31,827.28.[2]

## II.     BACKGROUND[3]

Sometime in early 2015, Counsel for Defendants Miguel Rosenfeld and Perla Farias de Eskinazi were alerted to the possibility that their retained expert on Venezuelan law, Luis Marturet, would no longer be willing to testify as an expert for the Defendants. On March 24, 2015, pursuant to the Court's Amended Scheduling Order, the Plaintiffs filed their renewed Motion for Summary Judgment, and on May 7, 2015, the Defendants filed their Cross-Motion for Partial Summary Judgment and Response to RCTV's Motion for Summary Judgment, ECF No. [176].[4]  In that Cross-Motion, the Defendants for the first time indicated to the Court that the Defendants' expert witness had resigned and the Defendants had retained a new expert, Jose Rafael Farina Diaz, ECF No. [176] at 8.

---

[2] The award of attorneys' fees and costs in this Order does not address any award of fees to either Party that may be appropriate at the conclusion of this litigation.  However, to the extent that a set off or credit may be applicable, the undersigned will resolve that issue in the context of any other award or denial of attorneys' fees and costs.

[3] The lengthy factual background of this case has been set forth in other Orders, including the Court's ruling on the Parties' Motions for Summary Judgment, ECF No. [217] and is not reiterated in this Order.

[4] Prior to the action being bifurcated, the Parties had completed an initial round of summary judgment briefing, ECF Nos. [105] [108] [126] [128] [133] [135].

The Plaintiffs then filed their Motion to Strike the New Expert and his reports and shortly thereafter the Defendants' filed their Motion to Allow Substitute Expert on Venezuelan Law.  Both Motions were fully briefed, and at a June 11, 2015 hearing on the Motions, the undersigned permitted the Defendants to substitute their new expert for their old expert.  In so doing, the Court implicitly found good cause for the Defendants to substitute the new expert, and stated,

> I am going to impose the excess costs and attorney's fees. I'm not making a determination about what those costs are at this point. You'll need to convince me that they are the excess costs, because certainly a lot of the preparation that you did, a lot of the analysis you did of Marturet would apply to—would apply to the Farina opinion. And it's really the duplicative effort. And I understand that it requires duplicative effort. Taking a deposition, I would suggest the entire costs of either Mr. Marturet's deposition or the costs of Mr. Farina's deposition would be something that would be allocated. And you can tell me which you think it should be.

ECF No. [189] at 46-47.

The RCTV Plaintiffs have now filed a Verified Motion to Determine Reasonable Attorneys' Fees requesting that RCTV be awarded $47,608.92 in attorney's fees and costs incurred due to the Defendants' substitution of that new expert, ECF No. [209]. In that Motion, RCTV states that the requested amount reflects 170.0 total hours for attorney's fees consisting of 153.9 hours of work performed by Alexander Esteban at an hourly effective rate of $213.05, and 16.1 hours of work performed by Fernando S. Aran at an effective hourly rate of $212.42, ECF No. [209] at 2.  In addition, RCTV seeks an additional $11,399.92 in costs incurred related to the Defendant's substitution of their expert.

In support of their request, the Plaintiffs have submitted invoices for attorneys' fees for the months of April 2015 through September 2015, which reflect the hours spent and the attorneys' fees incurred in preparing, deposing and litigating issues related to the new expert retained by the Defendants, ECF No. [209-2].  The Plaintiffs have also

3

submitted the Affidavit of Sanford L. Bohrer, a partner at Holland and Knight, LLP, who has reviewed the number of attorney hours spent as a result of the Defendants' substitution, as reflected in the billing record submitted to the court, and who states that the fees and costs are reasonable under the circumstances, as are the requested hourly rates given the experience and expertise of each individual performing work, ECF No. [201-1].

In Response, the Defendants contend that the Plaintiffs should only be entitled to recover extra attorneys' fees that are fairly attributable to the Defendants, ECF No. [215] at 1. The Defendants further contend that the Plaintiff should not be entitled to recover the costs incurred in the Plaintiffs' failed attempt to block the Defendants from substituting their expert. Also, Defendants contend that preparation to impeach the new expert witness should be minimal given that the witness was not a fact witness, but rather an expert in foreign law, and because the legal argument advanced by the new expert witness and the old expert witness was the same. Defendants thus contend that the Plaintiffs should be entitled to recover fees for the time spent preparing for the deposition of the new expert, the time to take the deposition, and the time spent integrating the new information regarding the substituted expert for purposes of preparing the summary judgment motion. The Defendants estimate an appropriate amount of attorneys' fees related to the substitution of the expert to be $6,785.00 reflecting 23 hours of work at an hourly rate of $295.00 for Mr. Esteban, ECF No. [215] at 4. Defendants also suggest that the Plaintiff should be entitled to recover costs in the amount of $1,508.50 to cover the costs of the deposition of the new expert, only. Therefore, Defendants urge that the Plaintiffs be awarded a total of $8,293.50 for additional attorneys' fees and costs incurred due to the Defendants' retention of a new

expert.[5] However, the Defendants also request that the Court defer payment of the costs and fees until the end of the case, when the award may be dealt with as a credit or debit in the overall assessment of fees and costs.

In reply, the Plaintiffs assert that the Defendants' response fails to discuss the reasonableness standard for assessing a request for attorneys' fees, and also fails to discuss the factors that the Court should consider in such an award. The Plaintiffs additionally assert that the amount of time spent by the attorneys on the new expert was reasonable given that the new expert was substituted at the eleventh hour, after Plaintiffs had submitted their renewed Motion for Summary Judgment that relied on the opinions of Defendants' first expert. RCTV Plaintiffs suggest that the amount spent therefore was commensurate with the importance of the subject matter upon which the new expert was opining, the fate of twelve different intellectual properties.

### III. LEGAL FRAMEWORK

In assessing the reasonableness of a request for attorney's fees, courts in the Eleventh Circuit generally apply the "lodestar" method to obtain an objective estimate of the value of an attorney's services. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). A court must first determine the "lodestar" figure by multiplying the number of hours reasonably expended by a reasonable hourly rate. Id.; *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The party who applies for attorney's fees bears the burden of submitting satisfactory evidence to establish both that the requested rate is in accord with the prevailing market rate and that the hours are reasonable." *Yarbrough v. Credit Control Servs., Inc.*, No. 09-61136-CIV, 2011 WL 860435, at *9 (S.D. Fla. Feb. 12, 2011), report and recommendation adopted, No. 09-61136-CIV, 2011 WL

---

[5] The Defendants have made suggestions about the total amounts that the Plaintiffs should be awarded but have not objected to specific billing entries and have not challenged the Plaintiffs' calculations or pointed to any other defect in the Plaintiffs' billing records.

860431 (S.D. Fla. Mar. 9, 2011) (citing id. at 1303). Further, in determining reasonableness, the court is to consider the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "Johnson factors").[6] Courts have broad discretion to determine what fees are reasonable under the circumstances. S*quire v. Geico Gen. Ins. Co.*, No. 12–23315–CIV, 2013 WL 474705, at *2 (S.D. Fla. Feb. 7, 2013)

IV. ANALYSIS

A. Attorneys' Fees

1. *Reasonable Hourly Rate*

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1396 (11th Cir. 1988). The court may also make an award based on its own experience. *Id.* at 1303. At the outset, the undersigned notes that although the Parties have not advanced arguments regarding whether the hourly rate sought by Plaintiffs' Counsel is reasonable, the Parties have referenced different hourly rates in the respective filings. Specifically, the Plaintiffs have indicated that the effective hourly rate charged by Plaintiffs' Counsel Alexander Esteban in this matter is $213.05 per hour and the effective hourly rate of Plaintiffs' Counsel Fernando S. Aran is $212.42, ECF No. [209] at 2. Although Plaintiffs explain that the hourly rate for Mr. Aran is typically $450.00, the Plaintiffs fail to state in

---

[6] The twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) are as follows:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

their Motion what the typical hourly rate, rather than the effective rate, is for Mr. Esteban. Defendants state in their Response that the hourly rate for Mr. Esteban is $295.00, ECF No. [215] at 4.

The undersigned has thoroughly reviewed the billing records submitted by the Plaintiffs. Based thereon, it appears that Mr. Esteban charged different hourly rates for the time at issue. Specifically, the records reflect that in April and May of 2015, Mr. Esteban charged an hourly rate of $195.00; in June of 2015, Mr. Esteban charged an hourly rate of $215.00; and, in July, August and September of 2015, Mr. Esteban charged an hourly rate of $225.00. Thus, it appears that in the Motion seeking fees, Mr. Esteban may have either discounted his rate to establish an effective rate based upon the write-off of duplicative and/or excessive hours, or that Mr. Esteban presented the Court with a blended rate. Under either scenario, based upon the prevailing market rate, the nature of the case, the Defendants' lack of opposition to Mr. Esteban's hourly rate, as well as the Court's own experience in assessing attorney's fees, the undersigned concludes that the hourly rates sought by Mr. Esteban are reasonable.

For the same reasons, the undersigned concludes that the hourly rate of $450.00 and/or the effective rate of $212.42 is entirely reasonable for Mr. Fernando S. Aran, who is a partner at the law firm of Aran Correa Guarch and Shapiro, P.A. On this point, the court notes that this case is a complex copyright case the requires the application of Venezuelan law as well as international treaties. As such, the hourly sought by Plaintiffs' counsel is reasonable. Accordingly, the undersigned will apply the effective hourly rates of $213.05 and $212.42 for Mr. Esteban and Mr. Aran, respectively, to any attorney fee award as requested in the Motion.

### 2.  *Reasonable Number of Hours Spent*

The Parties disagree about the number of hours that should have reasonably been spent on preparing for the new expert with the Plaintiffs contending that 170 hours is reasonable and the Defendants asserting that 23 hours is reasonable.  As stated above, the Plaintiffs seek to recover attorney's fees incurred between April of 2015, when the issue of the Defendants' new expert first arose, and September of 2015 when the Plaintiffs submitted their Reply to the renewed Motion for Summary Judgment and Response to Defendants' Cross-Motion for Summary Judgment.

As to those fees sought prior to the Court's ruling on the substitution of expert, the Plaintiffs are not entitled to a recovery.  In April of 2015, the Plaintiffs' Motion to Strike Defendants' New Expert, ECF No. [179] and the Defendants' Motion to Allow Substitute Expert on Venezuelan Law, ECF No. [182], both presented a dispute regarding whether the Defendants should be permitted to retain and utilize a new expert, rather than their old expert, even though the time for expert disclosures had passed and the Parties had already begun submitting their renewed motions for summary judgment. Although the substitution of the Defendants' expert took place while the Parties were briefing their respective summary judgment motions, the Defendants' request, in essence sought to modify the Court's scheduling order by permitting the Defendants to disclose an expert witness and that expert's report beyond the time period set by the Court in the Scheduling Order, ECF [143].  Modifications to scheduling orders are governed by Federal Rule of Civil Procedure 16(b)(4) which provides that a schedule may be modified only for a good cause and with the judge's consent. Fed. R. Civ. P. 16(b)(4). At the June 11, 2015 hearing on the Motion to Strike Defendants' Expert and Motion to Allow Substitute Expert on Venezuelan Law, the Court found that the Defendants had provided good cause for requesting the substitution due to the unforeseen unavailability

of the Defendants' previously retained expert and thus permitted the Defendants to substitute Mr. Farinas Diaz for Mr. Marturet, ECF No. [189] at 45-49.  Therefore, the Defendants prevailed on both the Motion to Strike and the Motion to Allow Substitute Expert.

As explained at the hearing, the fees awarded to the Plaintiffs by the Court were not for the Defendants seeking to substitute a new expert, but rather was for any duplicative costs that the Plaintiffs incurred in having to prepare, depose and respond to the Defendants' new expert.  Given the Court's ruling, the Plaintiffs are not entitled to an award of attorney's fees for contesting the Defendants' request to substitute their expert.  Indeed, the Plaintiffs could have acquiesced to the Defendants' substitution of the Defendants' expert and simply sought leave from the Court for additional time or an opportunity to rebut any new theories advanced by the new expert.  The Plaintiffs instead elected to file a Motion to Strike, a Response to the Defendants' Motion to Substitute and to argue those Motions.  The Court points out this fact not to criticize nor punish the Plaintiffs but to explain why the Plaintiffs are not entitled to an award of fees related to motions for which the Plaintiffs were not successful. Accordingly, the Plaintiffs are not entitled to recover attorneys' fees and costs for the time prior to the substitution of the Defendants' expert.  The Plaintiffs therefore are not entitled to recover for those fees incurred between April 10, 2015 and June 11, 2015.[7]

However, the Plaintiffs are entitled to recover those fees incurred in preparing for the deposition of the new witness, after the Court permitted the Defendants to substitute that witness between June 15, 2015 and August 14, 2015.  On this issue, the undersigned concludes that the preparation for the deposition of Mr. Farinas includes reviewing the

---

[7] This represents a deduction of $15,033.30 from the amount requested by the Plaintiffs representing $1930.50 for attorney's fees in April of 2015, $6,823.00 for attorney's fees in May of 2015, and $6,279.50 for fees incurred through June 11, 2015.

new expert's publications, background, prior testimony, communications regarding the same, as well as, preparing to rebut those theories advanced in the new expert's report, and attending the new expert's deposition. The Defendants have contended that the time expended in preparing for the new expert's deposition is excessive, and have suggested that the Plaintiffs should have spent not more than one full eight hour day preparing for the deposition, and seven hours for taking the deposition, for a total expenditure of fifteen hours related to the new expert's deposition. The Court disagrees with this assessment, in large part, because it fails to account for the significance of the expert's opinion and testimony in resolving the liability portion of this case. In addition, the Defendants fail to acknowledge that the new expert had a number of prior writings and interviews wherein he discussed the very Articles at issue in this case. It is unlikely that even the most skilled attorney could review, digest those materials as well as prepare for the deposition of the new expert in eight hours. As such, the undersigned rejects the Defendants' contention. Instead, following a thorough review of the Plaintiffs' billing records, and consideration of the *Johnson* factors, the Court finds that the hours submitted by the Plaintiffs related to the time period leading up to the new expert's deposition on August 14, 2015, are reasonable and should be fully compensated. Accordingly, the Plaintiffs are entitled to recover $18,728.00, representing $2,300.50 from June 15, 2015 through June 30, 2015, $3,757.50 for the month of July 2015, and $12,690.00 for the month of August, 2015. [8]

As to the post-deposition period, after August 2015, until the time that the Plaintiffs' submitted their Reply to their own renewed Motion for Summary Judgment and a Response to the Defendants' Cross-Motion for Summary Judgment on September 30,

---

[8] Five of the entries for August 2015 occurred after the deposition on August 14, 2015 but appear to relate to the new expert's deposition, with one entry relating to the new briefing schedule based upon the need for additional time for summary judgment briefing. The undersigned includes those entries as compensable.

2015, the undersigned finds that such time is not compensable. While the Plaintiffs' billing records for attorney's fees incurred following the deposition of the new expert include billing entries related to the Defendant's new expert, those entries are intertwined with and also include entries for tasks that presumably would have had to be completed anyway in filing a Reply to the Plaintiffs' Motion for Summary Judgment and the Defendants' Cross-Motion for Summary Judgment. By way of example, the billing entry for September 13, 2015, for 3.0 hours is described as "Draft section re: Defendants' flawed analysis of Itar-Tass Case." ECF No. 209-2 at 21. Logically, that portion of the Plaintiffs' Reply does not cite or analyze the new expert's opinions because the dispute on that issue does not require an analysis of Venezuelan Law but turns on an interpretation of U.S. Copyright Law and issues of initial ownership of the copyrights. Similarly, one billing entry for September 15, 2015 for 3.0 hours is described as "Draft reply and response to closing section of Discussion re: applicability of U.S. law." ECF No. [209-2] at 22. Again, that task would have to be completed irrespective of the interpretation of Venezuelan law and thus was not a duplicative effort due to the Defendants' substitution of their expert. Moreover, it strains plausibility to believe that the Plaintiffs would have spent *no* amount of time on preparing their Reply to their renewed Motion for Summary Judgment or a response to the Defendants' Cross-Motion for Summary Judgment had it not been for the Defendants' substitution of their expert.

      One more point bears discussion on this issue. Although the Plaintiffs emphasize that the Defendants' new expert (as well as their old expert) was tasked with opining on the "fate of 12 different intellectual properties that RCTV spent years and millions upon millions of dollars developing", ECF No. [209], this characterization is bit misleading because the opinions offered by both experts related to application of Venezuelan law to works produced by Venezuelan writers in a work for hire context. Thus, the number of

11

works at issue was irrelevant for purposes of assessing what would constitute a reasonable number of hours to spend on reading and analyzing the report.

This point is borne out by a review of the expert reports submitted by Defendants' original expert, Juan Luis Marturet, and Defendants' new expert, Jose Rafael Farinas Diaz, ECF Nos. [105-5], [176-1]. The first expert's report is entitled "Expert Report on Venezuelan Author's Right Laws" and consists of eleven pages. After an introductory paragraph, the report primarily consists of an overview of the Venezuelan legal system, including copyright law, and the Law on Author's Right law. As to the Author's Right Law (Ley Sobre Derecho de Autor), the report devotes five pages to an analysis to the interplay of the different provisions of the law with particular emphasis on Article 50, 52, 58 and 59. To the extent that the report discusses the specific works of Defendant Ms. Farias, that discussion is limited to the application of the particular provisions of the Author's Right Law to Ms. Farias works generally and not as to the 12 specific works at issue in this case.

The Report by the Defendants' new expert is entitled "Conflict Between Articles 52 and 59 of the Venezuelan Law on Authors' Rights and Their Impact on Work Created Under An Employment Relationship Or at the Request of Clients." That Report consists of twenty-three pages and after one page setting forth the expert's qualifications and the reason for the opinion, discusses the interplay of Articles 15, 16, 17, 39-42, 52, 59, 63, 64 of the Law on Author's Rights under the 1993 version of that law and the 1962 version of that law. Thus, it does not appear that preparation of a Reply to the Plaintiffs' Motion for Summary Judgment and the Defendants' Cross- Motion for Summary Judgment would necessitate a wholesale recrafting of the Plaintiffs' arguments. Notably, the Plaintiffs did not retain a rebuttal expert despite the fact that the Court granted them leave to do so if

they felt it was necessary after reviewing the report from the Defendants' new expert, and deposing the new expert.

Accordingly, the undersigned finds that the number of hours spent following the new expert's deposition for time not related to that deposition generally are not compensable. Without question, the Plaintiffs likely would have spent a significant amount of time rebutting the assertions advanced by the Defendants in their Cross-Motion. In addition, given that the new expert's deposition was taken in mid-August, after the Defendants had already filed their response to the Plaintiffs' Motion for Summary Judgment and their own Cross-Motion, and Plaintiffs' Reply was filed less than two months later in early-October, there is no reason to think that the Plaintiffs were not able to rely upon the recent review of materials in preparation of the new expert's deposition in crafting their Reply. Thus, the undersigned concludes that the Plaintiffs' request for 64.30 hours for duplicative work performed following the deposition of the new expert to be excessive and largely non-compensable because it was not duplicative, except to a very limited extent. The Defendants have suggested that it is reasonable to assume that eight hours of time would be duplicative due to the substitution of the expert and this limited amount should be awarded to the Plaintiffs. The undersigned concurs, and might well have awarded even less time but for this concession. Based upon the Defendants' concession on this point, the undersigned will award the Plaintiffs 8.0 hours at Mr. Esteban's effective hourly rate of $212.42, the effective hourly rate that Mr. Esteban charged the Plaintiffs for the month of September, following the deposition of the new expert.[9] The Plaintiffs therefore are entitled to recover $1,699.36 for attorney's fees incurred during the month of September for work performed.

---

[9] The billing records for the month of September 2015 reflect that no work was billed by Plaintiffs' Counsel on behalf of Mr. Aran during that time, ECF No. [209-2] at 21-23.

13

As to the Defendants' request that the Court delay payment of the attorney's fees and costs until the end of this case, that request is denied.  At the June 11, 2015 hearing on the Motion to Substitute Expert, the undersigned made clear that such fees would be paid before the resolution of the case by stating, "However, once costs are imposed, they can certainly be required to be paid before the resolution of the case.  If they're not paid, then the consequences could be, you know, a default, a dismissal of the counterclaim, something along those lines." ECF No. [189] at 44. Thus, the Defendants must pay the Plaintiffs' attorney's fee award for the substitution of Defendants' expert before the conclusion of this case, as set forth below.

### B.   Costs

As stated above, the Plaintiffs have requested reimbursement for costs related to the Defendants' substituted expert in the amount of $11,399.92, ECF No. [209] at 2.  The Defendants contend that Plaintiffs should only be permitted to recover $1,508.50 for costs incurred in having to depose the Defendants' new expert, ECF No. [215] at 4.  In their Reply, the Plaintiffs explain that the costs incurred include translating services to translate the several documents written by or about the new expert, the costs for court reporters, cost of transcripts, costs for Mr. Antequera's [RCTV's expert's] review of the new expert's opinions, and the cost of Mr. Antequera's rebuttal report, ECF No. [216] at 5-6. Thus, the Plaintiffs contend that the costs incurred as a result of the Defendants' substitution extend beyond those costs that were incurred in taking the deposition of the Defendants' new expert.

The undersigned finds that the costs requested by the Plaintiffs are compensable. First, the Plaintiffs have set forth the costs in their submissions, have provided a description of the costs, and have asserted that the costs were incurred because of the Defendants' substituted expert.  In addition, the Plaintiffs have submitted an affidavit in

support of this contention that states, "The total amount of costs incurred by and billed to RCTV as a result of the substitution was $11,399.92. These charges are limited to the fees and costs that became due and owing from RCTV to [the law firm] specifically as a result of the Defendants' untimely substitution, and they do not include fees and costs incurred for reasons other than Defendants' substitution." ECF No. [210-1] at 3. The Defendants have not challenged the Plaintiffs' contention that the costs they seek to recover were related to the new expert and were incurred as a result of the Defendants' substitution of experts. Rather, the Defendants have only asserted that the costs recoverable by the Plaintiffs should be limited to the costs of the deposition of the new expert. Such a limitation, however, was not ordered by the Court.[10]

Accordingly, because the Plaintiffs are entitled to recover all costs incurred as a result of the Defendants' untimely substitution of a new expert, and not just those costs incurred related to the deposition of that new expert, the undersigned concludes that the Plaintiffs' are entitled to recover $11,399.92 in costs.

## V. CONCLUSION

For the reasons set forth above, it is

**ORDERED AND ADJUDGED** that Plaintiff RCTV Companies' Verified Motion to Determine Reasonable Attorneys' Fees, ECF No. [209] is **GRANTED, in part**. The Plaintiffs shall be awarded fees and costs in the amount of $31,827.28, representing attorneys fees in the amount of $20,427.00 and costs in the amount of $11,399.92. The

---

[10] While at the June 11, 2015 hearing the undersigned stated that the costs of the deposition of the new expert would be something that would be recoverable, the court did not limit the Plaintiffs to recovering only those costs, ECF No. [189] at 46-47.

15

**Defendants shall pay this amount on or before May 1, 2017.**

**DONE AND ORDERED** in chambers in Miami, Florida, on 31st March, 2017.

_____
**ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE**

**Copies furnished via CM/ECF to:**

**All counsel of record**